IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
TRACIE FORD and all others   )
similarly situated,          )
                             )
          Plaintiff,         )
                             )
v.                           )        1:20-cv-736
                             )
CARDINAL INNOVATIONS         )
HEALTHCARE SOLUTIONS         )
                             )
          Defendant.         )
```

**MEMORANDUM ORDER**

This matter is before the court on the Plaintiffs' consent motion for approval of a settlement of claims brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (Doc. 33.) Based on this information and for the reasons that follow, the motion will be granted.

**I. SETTLEMENT**

To approve a settlement under the FLSA, the court must determine whether it is a fair and reasonable compromise of disputed claims and issues arising from a bona fide dispute raised pursuant to the act. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1355 (11th Cir. 1982); Taylor v. Progress Energy, Inc., 493 F.3d 454, 460 (4th Cir. 2007), superseded on other grounds as recognized by Whiting v. The Johns Hopkins Hosp., 416 F. App'x 312, 316 (4th Cir. 2011). Under § 216(b) of the act, when an action is brought by an employee against her employer to

recover back wages, the proposed settlement must be presented to the district court for review and determination that the settlement is fair and reasonable. Lynn's Foods Stores, 679 F.2d at 1353-54.

Under the FLSA, "there is a judicial prohibition against the unsupervised waiver or settlement of claims." Taylor, 493 F.3d at 460 (citing D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 114–16 (1946)). "[E]mployees cannot waive their right to . . . overtime wages [under the FLSA] unless such a settlement is overseen by the Department of Labor or approved for fairness and reasonableness by a district court." Boone v. City of Suffolk, Va., 79 F. Supp. 2d 603, 605 n.2 (E.D. Va. 1999) (citing Lynn's Food Stores, 679 F.2d at 1355). Thus, courts must determine that an FLSA settlement between an employee and an employer represents a "fair and reasonable resolution of a bona fide dispute over FLSA provisions" before approving the settlement. Hargrove v. Ryla Teleservices, Inc., No. 2:11cv344, 2013 WL 1897027, at *10 (E.D. Va. Apr. 12, 2013) (quoting Lynn's Food Stores, 679 F.2d at 1355).

### A. Bona Fide Dispute

When deciding whether there is a bona fide dispute as to a defendant's liability under the FLSA, courts consider the pleadings and the proposed settlement agreement. Duprey v. Scotts Co. LLC, 30 F. Supp. 3d 404, 408 (D. Md. 2014) (citing Lomascolo v. Parsons Brinckerhoff, Inc., No. 1:08cv1310, 2009 WL 3094955, at

2

*16–17 (E.D. Va. Sept. 28, 2009)). The FLSA claims at issue in this case constitute a bona fide dispute. For over a year Plaintiffs have sought redress for Defendant's alleged failure to pay them pursuant to the FLSA, and Defendant has consistently denied liability under the FLSA. (Doc. 34-1 at 2.) The parties have engaged in discovery and motion practice, and they have disputed whether liquidated damages are appropriate, the number of hours Plaintiffs had worked, and whether Defendant's I/DD Care Coordinators are exempt employees. (Doc. 34 at 8-9.) Therefore, the settlement is the product of contested litigation to resolve a *bona fide* dispute.

## B. Fairness and Reasonableness

Although the Fourth Circuit has not directly addressed the relevant factors the court should consider when determining whether a FLSA action settlement is fair and reasonable, district courts within the circuit have generally considered the fairness factors a court would consider under Federal Rule of Civil Procedure 23(e). See Hoffman v. First Student, Inc., No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); Lomascolo, 2009 WL 3094955, at * 11. For example, some courts have cited the following factors for consideration:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the

3

> experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits and (6) the amount of the settlement in relation to the potential recovery.

Hargrove, 2013 WL 1897027, at *2 (citing Lomascolo, 2009 WL 3094955, at *10). "There is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." Lomascolo, 2009 WL 3094955, at *10 (quoting Camp v. Progressive Corp., No. 01-2680, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)).

Here, the court finds the proposed settlement to be fair and reasonable. Each Plaintiff will be paid $250. (Doc. 34-1 at 4.) In addition, each Plaintiff will receive an allocated individual share of the Net Settlement Fund Remainder which is determined based on the individual's average weekly salary during the relevant period multiplied by the number of his or her FLSA workweeks. (Id.) That number is then divided by the sum of all the individual Plaintiffs' totals, and that quotient is then multiplied by the remaining funds in the Net Settlement Fund. (Id. at 4-5.) This results in an average payment of over $6,200 to each Plaintiff after attorneys' fees are paid. (Doc. 34 at 15.)

In considering the relevant factors, the court finds the following: (1) the parties have engaged in informal discovery prior to mediation and exchanged a significant amount of information,

4

including financial, educational, and work-related documentation from each of the 31 Plaintiffs (id. at 10-11); (2) the stage of the proceedings and the complexity, expense and likely duration of continued litigation favor settlement; (3) the absence of any collusion or fraud in the settlement agreement; and (4) Plaintiff's counsel's experience in such cases, having handled numerous other wage and hour matters on class, collective, and individual bases (Doc. 34 at 12; Doc. 34-2 at ¶¶ 5, 7; Doc. 34-3 at ¶ 8). The court has also considered the probability of Plaintiffs' success on the merits and the amount of the settlements in relation to the potential recovery. For example, Named Plaintiff Ford estimates that she worked between 50-60 hours per week while employed by the Defendant. (Doc. 1 at ¶ 26.) This settlement compensates Ford for 8 hours of overtime for every week she was employed. (Doc. 34 at 15.) The settlement awards collective members damages as if they had worked 48 hours every work week. This results in an average payment of over $6,200 to each Plaintiff after attorneys' fees and expenses, which is an appropriate amount given the Defendant continues to deny the claims in the case. (Id.) Additionally, the Defendant informed Plaintiffs' counsel that the Defendant would be dissolved as an entity due to unrelated circumstances and thus any potential recovery to the Plaintiffs would come from a future fund established to cover the Defendant's outstanding liabilities. (Doc. 34-2 at ¶ 34.) Given the

5

uncertainty of Plaintiffs' position among creditors, Defendant's continued denial and dispute of the claims, and the amount of the settlement in relation to both the alleged damages and the risk and uncertainty of continued litigation, the settlement is reasonable.  The proposed settlement appears to be the product of arms-length bargaining between experienced Plaintiffs' counsel and experienced Defendant's counsel, who have independently evaluated the likelihood of prevailing on their claims and defenses.  See (Doc. 34 at 13-15.)  The settlement will therefore be approved.

**II. ATTORNEYS' FEES AND COSTS**

Under the FLSA, the court is authorized to award "a reasonable attorney's fee to be paid by the defendant, and costs of the action," in addition to any judgment awarded to the plaintiff. 29 U.S.C. § 216(b); see Poulin v. Gen. Dynamics Shared Res., Inc., No. 3:09cv00058, 2010 WL 1813497, at *3-4 (W.D. Va. May 5, 2010) ("[T]he language of the FLSA contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs[]' . . . ." (quoting Maddrix v. Dize, 153 F.2d 274, 275-76 (4th Cir. 1946))).

There are two primary methods for calculating attorneys' fees in the Fourth Circuit: the percentage of the fund method, and the lodestar method. Phillips v. Triad Guar. Inc., No. 1:09cv71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016); Hall v. Higher One Machs., Inc., 2016 WL 5416582, at *7 (E.D.N.C. Sept. 26, 2016).

6

"[T]he percentage of fund method provides that the court award attorneys' fees as a percentage of the common fund," while "[t]he lodestar method requires the court to determine the hours reasonably expended by counsel that created, protected, or preserved the fund[,] then to multiply that figure by a reasonable hourly rate." Phillips, 2016 WL 2636289, at *2 (alteration in original) (quotation marks omitted).

In this case, Plaintiffs' attorneys seek attorneys' fees based on the percentage of the fund method. (Doc. 34 at 17; Doc. 34-2 at ¶ 5.) To determine whether the fees sought under the percentage of the fund method are reasonable, the lodestar may be used as a cross-check, as well as the twelve factors from Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978). Phillips, 2016 WL 2636289, at *2-3; Kirven v. Cent. States Health & Life Co. of Omaha, No. 3:11-2149-MBS, 2015 WL 1314086, at *12 (D.S.C. Mar. 23, 2015) (collecting district court cases within the Fourth Circuit that use the lodestar method as a cross-check to ensure that the percentage of the fund method award is fair and reasonable).

The Fourth Circuit considers twelve factors in judging the reasonableness of an award of attorneys' fees in FLSA cases:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the

7

> instant litigation; (5) the customary fee for
> like work; (6) the attorney's expectations at
> the outset of the litigation; (7) the time
> limitations imposed by the client or
> circumstances; (8) the amount in controversy
> and the results obtained; (9) the experience,
> reputation and ability of the attorney; (10)
> the undesirability of the case within the
> legal community in which the suit arose; (11)
> the nature and length of the professional
> relationship between attorney and client; and
> (12) attorneys' fees awards in similar cases.

<u>Barber</u>, 577 F.2d at n.28.[1]

The parties have agreed that Plaintiff's counsel will receive $99,833.33, equal to 33.33 percent of the Gross Settlement Fund, as attorneys' fees, plus reimbursement of their costs and expenses of $6,007.05.[2] (Doc. 34 at 6; Doc. 34-1 at § 2(D).) "In considering awards in similar cases, courts look to cases of similar size, rather than similar subject matter." <u>Boyd v. Coventry Health Care Inc.</u>, 299 F.R.D. 451, 465 (D. Md. 2014). The requested 33.33 percent award is within the general range of percentages that have been approved in other cases in this circuit. <u>See</u> <u>id.</u> ("Attorneys' fees awarded under the 'percentage of recovery' method are

---

[1] These standards have been applied more recently in an unreported FLSA case, <u>Jackson v. Estelle's Place, LLC</u>, 391 F. App'x 239, 243 (4th Cir. 2010), which, although not precedential, is nevertheless entitled to the persuasiveness of its reasoning. <u>See</u> <u>Collins v. Pond Creek Mining Co.</u>, 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

[2] The amount requested for expenses ($6,007.05) is less than the amount provided for in the settlement agreement ($6,266.74).

8

generally between twenty-five (25) and thirty (30) percent of the fund."); Phillips, 2016 WL 2636289, at *9 (awarding attorneys' fees of 30 percent of the settlement amount in a percentage of the fund case); cf. Kruger v. Novant Health, Inc., No. 1:14cv208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) (noting that "courts have found that a one-third fee is consistent with the market rate in a complex ERISA 401(k) fee case" (quotation marks omitted)).

In considering the relevant Barber factors, the court finds the following: (1) the case required collective counsel to expend significant time and labor, as Plaintiffs' counsel invested over 170 hours in litigating the claims in this case for over a year (Doc. 34 at 19; Docs. 36-1; 36-2; 36-3)[3]; (2) the novelty and difficulty of the questions raised weighs in favor of approving the fee because collective counsel had to address procedurally and substantively complex FLSA issues, including the applicability of the learned profession exemption to collective members (id. at 21); (3) the skill required to properly perform the legal services rendered weighs in favor of approving the fee because FLSA collective actions involve law which changes regularly due to growing jurisprudence across the country (id.); (4) the attorneys' opportunity costs in pressing the instant litigation weigh in favor of approving the fee because the significant involvement in time

---

[3] As noted infra, the court ordered, and Plaintiffs' counsel filed, relevant billing records displaying each attorney's allocation of time for this matter. (Doc. 35.)

9

reduced collective counsel's ability to take on additional cases during the course of this litigation, with counsel turning down other potentially remunerative work (id.); (5) Plaintiffs' counsel's customary fee for like work is a 40 percent contingency fee, though Plaintiffs' counsel agreed to seek only a one-third contingency fee with this settlement agreement, so the customary fee for like work factor weighs in favor of approving the settlement (id. at 22); see Smith v. Krispy Kreme Doughnut Corp., No. 1:05CV187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) ("In this jurisdiction, contingent fees of one-third are common."); (6) the attorneys' expectations at the outset of the litigation weigh in favor of approving the fee because collective counsel undertook the case on a 40 percent contingency fee contract, thereby taking the risk of obtaining nothing if no recovery was obtained for Plaintiff or the collective (id.); (7) there were no time limitations imposed by the client or circumstances in this case, so the seventh factor is not applicable to this case (id.); (8) the results obtained weigh in favor of approving the fee, because counsel obtained a good result for the collective (id. at 20); (9) the experience, reputation, and ability of the attorneys weigh in favor of approving the fee, because collective counsel have significant experience litigating FLSA wage and hour cases across the country — two lawyers have decades of experience litigating similar cases and contribute to the wage and hour

10

treatise Wage and Hour Laws: A State-by-State Survey, published by Bloomberg BNA with the American Bar Association Section of Labor and Employment Law, and one lawyer has litigated over 100 wage and hour cases, including over 20 collective actions in federal courts in North Carolina (Doc. 34 at 12-13; Doc. 34-2 at ¶ 5, 7; Doc. 34-3 at ¶ 8); (10) the undesirability of this case within the legal community is not material in this case, nor is (11) the nature and length of the professional relationship between attorney and client; (12) the attorneys' fees award in similar cases factor weighs in favor of approving the settlement because fee awards of one-third of the common fund are common in FLSA cases (Doc. 34 at 22-23); see, e.g., DeWitt v. Darlington Cnty., S.C., No. 4:11-cv-00740-RBH, 2013 WL 6408371, at *9 (D.S.C. Dec. 6, 2013) (collecting cases where courts approved attorney fees of one-third of the recovery in contingency cases).

"A lodestar cross-check of the fees request confirms its reasonableness." Phillips, 2016 WL 2636289, at *7. "The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." Id. (quoting Boyd, 299 F.R.D. at 467.) The lodestar fee is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Lyle v. Food Lion, Inc., 954 F.2d 984, 988 (4th Cir. 1992) (quoting Hensley v.

11

Eckerhart, 461 U.S. 424, 433 (1983)). The lodestar fee is presumptively reasonable. Id. (citing Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986)).

Here, Plaintiffs' counsel represents that the lodestar amount is $84,422. (Doc. 34 at 19.) This court ordered counsel to file relevant billing records in support of that amount. (Doc. 35.) Counsel have since filed those records which show the duration and substance of the billings. (See Doc. 36.) In total, the records reflect that counsel spent 173.2 hours litigating this claim. (Id.) Counsel seeks $99,833.33 as their attorneys' fees, which equates roughly to an hourly rate of $576. As other wage and hour attorneys have indicated, rates for similarly experienced attorneys in the Middle District of North Carolina are "from $400-$600 or more" per hour. (Doc. 34 at 19.)

Counsel's request of attorneys' fees of $99,833.33 is 1.18 times larger than the lodestar amount. (Id. at 22.) This multiplier is within the range of multipliers district courts have found to be reasonable. See Phillips, 2016 WL 2636289 at *8 ("courts have found that lodestar multipliers ranging from 2 to 4.5 demonstrate the reasonableness of a requested percentage fee"); Domonoske v. Bank of America, N.A., 790 F. Supp. 2d 466, 476 (W.D. Va. 2011) (collecting cases and holding that a 1.8 lodestar multiplier is "well within the normal range of lodestar multipliers.").

12

Because Plaintiffs' counsel's lodestar multiplier is below those generally accepted, the requested fees are reasonable.

## III. SERVICE AWARD

The parties' settlement agreement provides for a service payment of $10,000 for Plaintiff Tracie Ford and $500 to each of the four pre-certification opt-in Plaintiffs. (Doc. 34-1 at 5.) "Courts around the country have approved substantial [service] payments in FLSA collective actions and other employment-related class actions." DeWitt, 2013 WL 6408371, at *14 (collecting cases); see Edelen v. Am. Residential Servs., LLC, No. DKC 11-2744, 2013 WL 3816986, at * 16 (D. Md. July 22, 2013) ("Incentive payments to class representatives have been awarded in both FLSA collective actions and Rule 23 class actions."). Service payments for named plaintiffs "compensate Plaintiffs for their additional efforts, risks, and hardships they have undertaken as class representatives on behalf of the group in filing and prosecuting the action." Dewitt, 2013 WL 6408371, at *14. "To determine whether [a service] payment is warranted, the court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Kirven, 2015 WL 1314086, at *13.

Plaintiff Tracie Ford provided factual information and assisted Plaintiffs' counsel with the prosecution of the

13

litigation, including participating in numerous discussions prior to mediation. (Doc. 34-2 at ¶ 40.) She took off work to travel to Charlotte, North Carolina in order to participate in mediation. (Id.) She also filed this suit knowing that employers may not hire her in the future because she filed a lawsuit against a former employer. See Leigh v. Bottling Grp., LLC, No. DKC 10-0218, 2012 WL 460468, at *7 (D. Md. Feb. 10, 2012) (considering the risk a named plaintiff faces in terms of his "future job prospects as a result of his participation" in a suit against a former employer.) Several factors demonstrate that the $10,000 service award is reasonable: Ford's role in initiating this lawsuit; the time and effort she devoted to achieving a favorable resolution; her total level of involvement in the case; the fact that no objection has been made to the proposed award; and the fact that the amount in question constitutes less than one and one-half percent of the total settlement fund. The award will therefore be approved. See Leigh, 2012 WL 460468, at *7 (approving a service award that was less than one and one-half percent of the total settlement fund in an FLSA collective action).

For similar reasons, the awards for the four Pre-Certification Opt-in Plaintiffs will also be approved. The Pre-Certification Opt-in Plaintiffs provided significant service to the putative class members, including by providing valuable information early in this litigation that increased the likelihood

14

of conditional certification being granted. (Doc. 34-2 at ¶ 41.)

## III. CONCLUSION

For these reasons, therefore,

IT IS ORDERED that the Plaintiff's Unopposed Consent Motion to Approve FLSA Settlement Agreement (Doc. 33) is GRANTED.

IT IS FURTHER ORDERED that the Settlement Administrator is directed to issue settlement payments to the FLSA collective members in accordance with the terms of the Settlement Agreement.

IT IS FURTHER ORDERED that the payment of attorneys' fees, costs, and service awards requested in Docket Entry 33 shall be made in accordance with the terms of the settlement agreement (Doc. 34-1).

IT IS FURTHER ORDERED that this court retains jurisdiction over this case for purpose of resolving any issues pertaining to settlement administration.

IT IS FURTHER ORDERED that the action is DISMISSED WITH PREJUDICE.

>                /s/   Thomas D. Schroeder
>          UNITED STATES DISTRICT JUDGE

January 21, 2022